IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Sharon L. Howard, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 2:04-0584-PMD-RSC |
| | ) | **ORDER** |
| Charleston County Aviation | ) | |
| Authority, | ) | |
|     Defendants. | ) | |
| _____ | ) | |

In this employment discrimination action, Plaintiff Sharon L. Howard ("Howard") alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Howard sues Charleston County Aviation Authority ("Authority") for alleged sexual harassment and retaliation she suffered while employed with Defendants. The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Howard has filed timely objections to the R&R.

**BACKGROUND**

The facts, either undisputed or as presented by the plaintiff, relevant to this case and the filed objections are as follows.

Defendant Authority hired plaintiff Howard in January of 1999 to fill a position providing general passenger assistance at the Charleston airport's information desk. Both at the time of her hire and eighteen months later, Howard signed an acknowledgment of receipt of an employee handbook which included all the appropriate prohibitions against sexual harassment and the employee's duty to report same to the employee's supervisor or a member of management.

On November 13, 2001, Howard reported to her supervisor, DeVeaux, that a coworker, Randy Tennant (Tennant), was making comments of a sexual nature, comments with sexual innuendo, and asking her personal questions about her life. The supervisor told Howard that she would address it. Tennant was given a written confirmation of a verbal warning to him not to do it again and that further discipline would follow if he repeated his bad behavior. Howard, as the reporting party, was also given a "plan of action" form that became a part of her file.

Howard was not scheduled to work with Tennant again for about a year. DeVeaux told Howard to come to her if there were any further problems with Tennant. Several times, DeVeaux asked Howard if there were any more problems, and Howard denied any problems with Tennant each time. Howard continued to get raises and good reviews after she made her complaint.

In January of 2002, two female employees unaffiliated with Howard complained that Tennant had behaved inappropriately towards them. Tennant was given a more formal written warning and told that any further complaints could result in his dismissal. By all accounts, Tennant thereafter ceased his inappropriate behavior towards the complaining employees.

In May of 2002, DeVeaux provided to Howard and the entire dispatch crew a three hour class on sexual harassment and a training book. The book emphasized that sexual harassment should not be tolerated and must be reported. Howard says that she read the book.

On January 15, 2002, and on April 3, 2002, Tennant and Howard had several overlapping hours together on the day shift. DeVeaux checked in on them and both told DeVeaux that there were no problems. On October 27, 2002, Howard was leaving after her last shift when DeVeaux called her into a private office and asked her if she was having any problems. Howard told DeVeaux that there were no problems. She made no mention of Tennant.

On November 4, 2002, Howard had a chance encounter with Airport Officer Melvin while in the airport terminal. Howard and Officer Melvin exchanged greetings and small talk. As the conversation progressed, Howard told Officer Melvin that she was having on-going problems with Tennant. Officer Melvin urged Howard to report the problems herself. Despite Howard's statement that she did not want the problem reported, Officer Melvin knew that Authority policies required that sexual harassment be reported. He reported the harassment to Captain Britnell that day.

In the investigation that followed, Howard subsequently reported that Tennant would turn any conversation into a sexual conversation, and that he said if anyone ever reported him for sexual harassment again he would sue her and the airport. During the investigation, many employees were interviewed who said that Howard told them about Tennant. Tennant was fired one week after Officer Melvin reported what Howard told him.

Howard was advised to refrain from having inappropriate personal conversations at work and was suspended for one week without pay for failing to report the harassment. Additionally, Howard was directed to report to a counselor with the Authority's Employee Assistance Program. Although participation in the counseling was mandatory, the sessions were confidential.

After Howard returned to work from her unpaid leave, she worked for two months during which time the Authority provided her with employer-paid training in keyboarding to help improve her job skills. Howard resigned on January 15, 2003.

Howard seeks recovery for: (1) sexual harassment by a coworker in violation of Title VII; (2) retaliation in violation of Title VII; and (3) constructive discharge.

## STANDARD OF REVIEW

### A.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(c). After a review of the entire record, the R&R, and Howard's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Therefore, the court adopts the Magistrate Judge's R&R in full and incorporates it by specific reference. The court supplements that R&R with the analysis below.

### B.     Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## OBJECTIONS

After a thoughtful and thorough consideration of the facts in evidence, the Magistrate recommended in his R&R that the defendant's motion for summary judgment be granted. Howard cites three objections to the R&R: (1) that the Magistrate failed to consider that Howard "was also disciplined when she initially reported Mr. Tennant's behavior" in November of 2001 (Obj. at 1.); (2) that Howard did demonstrate a basis upon which to impute liability to the Authority for Mr. Tennant's behavior; and (3) that the Magistrate erred in finding that Howard's allegations, even if true, do not constitute actionable harassment. This court considers each objection in turn.

**(1) Howard's objection to the Magistrate's failure to consider that Howard was disciplined for making her complaint against Tennant in November of 2001.**

Plaintiff contends that in making his decision, the Magistrate wrongfully failed to consider that the "plan of action" prepared for Howard after making her initial complaint against Tennant in November of 2001 was disciplinary and that "after the complaint, she was treated differently." Plaintiff complains that the R&R's restatement of facts "left out that Ms. Howard was also disciplined when she initially reported Mr. Tennant's behavior." (Obj. at 1.) Because there is no evidence in the record to support these claims, the Magistrate correctly did not consider them.

5

According to the record, Ms. Howard's complaint on November 13, 2001 prompted an investigation by the Authority which resulted in: (1) a disciplinary document given to Tennant, (2) a plan of action form given to Tennant, and (3) a plan of action form prepared for Howard as the reporting party.  The "plan of action" form prepared for Howard outlines the admonition given to Tennant and describes the supervisor's plan to deal with the unwanted behavior.  The final paragraph of the form, entitled "Your Responsibility," encourages Howard to continue to report violations of the sexual harassment policy and advises her to "avoid giving opportunity to discuss your personal life."  There is no indication, either in the written plan or in the record, that this "plan of action" was disciplinary.  Also, there is no indication that, at the time, Howard considered that she had been disciplined.  In fact, she was explicitly told that "if I have any more problems, to come to [the supervisor]." (Pl. Dep. at 62, 1. 15.)  Because the record does not support Howard's contention that she was disciplined following her complaint in 2001, the Magistrate did not err in failing to consider this allegation in rendering his R&R.

**(2) Howard's objection to Magistrate's conclusion that there was no basis for imputing liability.**

The Magistrate concluded that there was no basis from which to impute liability to the employer for Tennant's alleged continued harassment.  In reaching this decision, the Magistrate correctly notes that the employer liability standard for co-worker harassment is a negligence standard. *Mikkels v. Durham*, 183 F.3d 323, 329, n. 4 (4th Cir. 1999) ("It is now settled that this failure to act after notice standard is one for imposing Title VII liability on employers for their direct negligence. . . .").  Under this standard, liability attaches to an employer when, after acquiring actual

6

or constructive knowledge of the allegedly harassing conduct, the employer fails to take prompt and adequate remedial action to correct it. *Id.*

It is undisputed that the Authority knew of Tennant's harassment of Ms. Howard in 2001. Howard herself reported the harassment and appropriate remedial measures were taken by her supervisor. It is also undisputed that, following this incident, Howard made no further complaints to the Authority management, even when directly questioned by her supervisor.

Despite the fact that she denied being harassed until confronted by Officer Melvin's report, Howard now objects that the Authority had actual knowledge of Mr. Tennant's sexual harassment of her because other employees filed complaints against Mr. Tennant in 2002 for unrelated incidents of sexual harassment. In response to the 2002 complaints, the Authority investigated and gave Tennant more severe discipline and a warning that another infraction could result in discharge. This discipline was effective in stopping Tennant's offensive conduct towards the complaining employees. In addition to the discipline, the Authority provided sexual harassment training and a training book to the employees, including Howard. In response to both the 2001 and the 2002 complaints against Tennant, the Authority responded directly and promptly and in a manner that, as far as the Authority knew, caused the complained-of behavior to cease. This court fails to see how the unrelated complaints of different employees can serve to put Authority on notice as to Tennant's continued inappropriate behavior in regards to Howard.

Plaintiff also asserts that the Authority should be deemed to have actual knowledge of Tennant's continuing harassment of Howard because Howard told her associate, Wanda Cox, about it. This claim is not tenable. Ms. Cox is neither an employee of the Authority, nor did she ever

inform the Authority of Howard's difficulties with Tennant. There is no reason that Ms. Cox's knowledge, assuming she had any, should be imputed to the Authority.

As the Magistrate succinctly noted,

> It appears the plaintiff cannot establish any basis for imputing liability to the defendant. Each time complaints were received, it was promptly investigated. . . . Howard repeatedly denied any problems with Tennant until she was confronted with Officer Melvin's report. Thereafter, there was a thorough investigation and Tennant was fired. It appears Howard had at her disposal the knowledge imparted to her by her employer and mechanisms made available to her by her employer to stop Tennant, but simply refused to use them.

(R&R at 19-20.) It is clear from the record that the Authority took quick action to investigate complaints and took reasonable steps to prevent harassment in the future. Neither the additional complaint filed against Tennant nor Ms. Cox's knowledge of the harassment can constitute actual or constructive knowledge of the harassment such that liability can be imputed to the Authority. Accordingly, the Magistrate correctly concluded that Howard presented no basis from which to impute liability to the Authority for Tennant's alleged continued harassment.

**(3) Howard's objection to the Magistrate's conclusion that the alleged harassment was not sufficiently severe and frequent to be actionable.**

The Magistrate concluded that the alleged conduct by Tennant was not, as a matter of law, sufficiently severe and pervasive to be actionable. He correctly notes that the third requirement for a Title VII claim is that the harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savs. Bank, FSV v. Vinson,* 477 U.S. 57, 67 (1986). This requirement has both subjective and objective components; meaning that, even though the plaintiff may find behavior offensive, she may not recover unless a "reasonable" person in her position would also consider it offensive. (R&R at 12.) After extensively

8

reviewing the facts, the Magistrate notes that, in her four year employment with the Authority, Howard worked a total of sixteen night shifts with Tenant, only seven of which were after her November 2001 complaint. The Magistrate commented that "even if he made offensive comments on each shift they worked together, it cannot be said the comments were 'frequent.'" (R&R at 14.) As such, the Magistrate found that the evidence is insufficient to support a finding that the harassment, even if as described by Howard, would have been "severe or pervasive" to a reasonable person in Howard's position. The Magistrate also concluded that, while Howard unquestionably found Tennant's comments offensive, the comments did not unreasonably interfere with her work performance nor did they create an abusive working environment.

In response to these conclusions, Plaintiff objects that "[t]he question of reasonableness is a jury question, not a question of law." (Obj. at 4.) This objection is without merit and reflects a misunderstanding of the law. In considering a summary judgment in a Title VII case, the Court must accept both Plaintiff's factual version of the offensive conduct and that Plaintiff was subjectively offended by that conduct; however, whether the alleged conduct is objectively offensive based on the reasonable person standard is a question of law for the Court to decide. *See Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766 (4th Cir. 1997); *Hopkins v. Balitmore Gas and Elect. Co.*, 77 F.3d 745 (4th Cir. 1996). This standard is designed to filter out complaints attacking "the ordinary tribulations of the workplace" and is appropriately considered at the summary judgment phase. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Considering the totality of the circumstances, this court finds that the Magistrate properly determined that the alleged conduct did not, as a matter of law, rise to the level of actionable harassment.

## CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that the Defendant Charleston County Aviation Authority's Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

                                                                        _____
                                                                        PATRICK MICHAEL DUFFY
                                                                        United States District Judge


**Charleston, South Carolina**
**September 8, 2005**

10